UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RICHARD FIGUEROA,

                              Plaintiff,

            v.

JEH JOHNSON, Secretary,
U.S. Department of Homeland Security,

                              Defendant.

Civil Action No.
11-CV-2087

(Kuntz, J.)
(Levy, M.J.)

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
*Attorney for Defendant*
271 Cadman Plaza East, 7th Floor
Brooklyn, New York 11201
(718) 254-7036

Seth D. Eichenholtz
Assistant United States Attorney
        (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS .....................................................................................2

LEGAL STANDARDS PERTAINING TO DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT PURSUANT
TO FED. R. CIV. P. 56 .....................................................................................2

      A.     STANDARD FOR SUMMARY JUYDGMENT IN
            TITLE VII CASES  .................................................................2

      B.     STANDARDS FOR EVALUATING PLAINTIFF'S CLAIMS OF
            DISCRIMINATION AND RETALIATION UNDER TITLE VII – THE
            MCDONALD DOUGLAS FRAMEWORK ........................................4

ARGUMENT .....................................................................................................5

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFF'S CLAIMS OF DISCRIMINATION, RETALIATION,
AND HOSTILE WORK ENVIRONMENT................................................................5

      A.     PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
            DISCRIMINATION ...................................................................5

      B.     PLAINTIFF CANNOT ESTABLISH A PRIMA CASE OF
            RETALIATION .......................................................................9

          1.     Plaintiff Cannot Establish Causation Regarding his 2007 Holiday
                Assignments and Subsequent Proposed Suspension, Because
                Plaintiff Had Yet To Engage In Protected Activity When These
                Actions Took....................................................................... 10

          2.     Plaintiff Cannot Show Causation For The Other Three Incidents
                Because, In Each Instance, There Is Insufficient Temporal Proximity
                To Infer Causation Between The Alleged Protected Activity And The
                Alleged Retaliation .................................................................11

                a.  Plaintiff's 2009 Job Bid and Assignment .......................... 12

       b.  Plaintiff's Two Day Suspension For Failing To Work In His Assigned Booth And Leaving Work without Authorization On July 25, 2011 .. 13

       c.  Plaintiff's Ten Day Suspension For Failing To Follow His Supervisor's Instructions On November 25, 2011.................................................... 14

C.    EVEN ASSUMING THAT PLAINTIFF COULD ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION OR RETALIATION, DEFENDANT HAS LEGITIMATE, NON-DISCRIMINATORY REASONS FOR TAKING ACTION ................................................................................................ 15

    1.  In 2007, Plaintiff Was Scheduled To Work Holidays Based On CBP Policy, And Plaintiff Was Suspended After An Investigation Revealed That He Had Engaged In Insubordination........................................................................... 16

    2.  Plaintiff Was Afforded The Opportunity To Participate In the 2009 CBP Bidding Process And Was Assigned To Posts Throughout The Year Based On His Preferences .................................................... 18

    3.  Plaintiff Was Suspended For Two Days Based On His Refusing To Report To His Assigned Booth And Leaving Work Without Following Proper Procedures...................................................................................................... 19

    4.  Plaintiff Was Suspended For Ten Days In 2012 Because He Reported To His Overtime Shift Unprepared............................................................................ 20

D.    PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT……..21

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Department of Public Safety*, No. 13-111-cv, 2014 WL 4191178
 (2d Cir. Apr. 29, 2014) ...........................................................................................16

*Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) ..............................................22, 23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .....................................3

*Brown v. Daikin America Inc.*, 756 F.3d 219 (2d Cir. 2014) ............................... 6-8

*Burlington Northern & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006) ...............10

*Campanaro v. City of Rome*, 999 F. Supp. 277 (N.D.N.Y. 1998) ...............................3

*Carrasco v. Lenox Hill Hospital*, No. 99-CV-0924, 2000 U.S. Dist. LEXIS 5637
(S.D.N.Y. Apr. 20, 2000) .........................................................................................21

*Cifra v. G.E. Co.*, 252 F.3d 205 (2d Cir. 2003) ......................................................10

*Clark County Sch. District v. Breeden*, 532 U.S. 268 (2001) .................................12

*Clemmons v. Stuyvesant High School*, No. 00 Civ. 4158, 2006 WL 4888057
(S.D.N.Y. Oct. 12, 2006) ...........................................................................................5

*Cruz v. Coach Stores, Inc.*, 202 F.3d 560 (2d Cir. 2000) .........................................5

*D'Annunzio v. Ayken, Inc.*, 11-CV-3303 (WFK), 2014 WL 2600322 (E.D.N.Y. Jun. 10,
2014) ..........................................................................................................................22

*Eastman Kodak Co. v. Image Technology Services, Inc.*, 504 U.S. 451 (1992) .............3

*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931 (2d Cir. 2010) ...............................16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...........................................22

*Feingold v. State of New York*, 366 F.3d 138, 150 (2d Cir. 2004) ...................21, 22, 23

*Forde v. Donahoe*, 10-CV-2445 (CBA), 2012 WL 1020038 (E.D.N.Y. Mar. 26, 2012) ......10, 12

*Gertskis v. New York City Department of Health and Mental Hygiene*,
2009 WL 812263 (S.D.N.Y. 2009) ...........................................................................25

*Gordon v. New York City Bd. Of Educ*, 232 F.3d 111, 117 (2d Cir. 2000) ...................10

*Harris v. Forklift System, Inc.*, 510 U.S. 17, 21-23 (1993)................................................21, 22, 23

*Harrison v. U.S. Postal Service*, 450 ........................................................................11, 12

*Howley v. Town of Stratford*, 217 F.3d 141 (2d Cir. 2000) ................................................23

*Johnson v. New York City Dept. of Educ.*, 10-CV-2604 (WFK), 2014 WL 4090844
  (E.D.N.Y. Aug. 19, 2014) ............................................................................................16

*Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005)....................................15

*Kirkland v. Cablevision Systems*, 13-3625-cv, 2014 WL 3686090 (2d Cir. July 25, 2014)...........4

*Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391 (S.D.N.Y. 2012) ...................12

*Leibowitz v. Cornell University*, 584 F.3d 487 (2d Cir. 2009) ......................................16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)...................................4

*Mohammed v. New York City Department of Education*, 932 F. Supp. 2d 420, 429
  (E.D.N.Y. 2013) ....................................................................................................10, 15

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...................................24

*Nicastro v. Runyon*, 60 F. Supp. 2d 181 (S.D.N.Y. 1999).............................................12

*Norville v. Staten Island University Hospital*, 196 F.3d 89 (2d Cir. 1999) ....................6

*Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 80-81 (1998)..................22, 23

*Padob v. Entex Information Serv.*, 960 F. Supp. 806 (S.D.N.Y. 1997)........................11

*Quarles v. General Motors Corp.*, 758 F.2d 839 (2d Cir. 1985).....................................3

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998)...................................23

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980)................3

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133 (2000) ....................................4

*Richardson v. Newburgh Enlarged City Sch. District*, 984 F. Supp. 735 (S.D.N.Y. 1997) ...........9

*Roge v. NYP Holdings, Inc.*, 257 F.3d 164 (2d Cir. 2001) .............................................4

*Rozenfeld v. Department of Design and Construction of City of New York*, 875 F. Supp. 2d 189 ...................................................................................................5

*Shumway v. UPS*, 118 F.3d 60 (2d Cir. 1997) ..........................................................4

*Slattery v. Swiss Reins. Amer. Corp.*, 248 F.3d 87 (2d Cir. 2001 .............................11

*St. Juste v. Metro Plus Health Plan*, 10-CV-4729 (MKB), 2014 WL 1266306 (E.D.N.Y. Mar. 28, 2014)...........................................................................................................11

*St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502 (1993) ................................................16

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).......................4

*Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997).................................................23

*Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708 (2d Cir. 1996) ...........................21

*White v. Eastman Kodak Co.,* 368 ............................................................................16

*Woods v. Enlarged City School District of Newburgh*, 473 F. Supp. 2d 498 (S.D.N.Y. 2007) ..............................................................................................................12

## STATUTES

42 U.S.C. 2000e-2(a)(1) 3(a) ...........................................................................5, 10

## RULES & REGULATIONS

Fed. R. Civ. P. 25.............................................................................................................1

Fed. R. Civ. P. 56.........................................................................................................1, 3

## PRELIMINARY STATEMENT

Defendant Jeh Johnson,[1] Secretary of the United States Department of Homeland Security ("Defendant"), by his attorney, Loretta E. Lynch, United State Attorney for the Eastern District of New York, Seth D. Eichenholtz, Assistant U.S. Attorney, of counsel, respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff Richard Figueroa ("Plaintiff"), a U.S. Customs and Border Protection ("CBP")[2] Officer ("CBPO") working at John F. Kennedy International Airport ("JFK"), commenced this action on April 29, 2011 alleging claims of discrimination, retaliation and a hostile work environment.  See Exhibit A to the September 22, 2014 Declaration of Seth D. Eichenholtz, Plaintiff's Amended Complaint ("Ex. A").  Plaintiff's claims are based on four alleged discreet challenged agency actions, which plaintiff claims contributed to a hostile work environment and that were all motivated by discrimination and/or retaliation.  In essence, Plaintiff's claims are based on the following: [1] in November and December 2007, he was directed (but failed) to work on two federal holidays, and that he was improperly suspended for one day after arguing with his supervisor about the assignments, [2] in February 2009, he did not immediately (but did shortly thereafter) receive his preferred assignment in an agency-wide job bidding process because it was first offered to other more senior employees, [3] in July 2011, he was suspended for two days after refusing to follow a direct order and then left work "sick" without authorization and [4] in November 2011, he was improperly suspended for 10 days when, in 2011, when he reported for an overtime assignment without his required equipment.

---

[1] The Honorable Jeh Johnson is the current Secretary of Homeland Security, having taken office on December 23, 2013.   He is automatically substituted for Janet Napolitano as the named official defendant.   See Fed. R. Civ. P. 25(d)(1).

[2] CBP is a sub-agency of the United States Department of Homeland Security.

Defendant is entitled to summary judgment because Plaintiff cannot establish the requisite elements of his claims of discrimination, retaliation, and hostile work environment. First, Plaintiff cannot establish a *prima facie* case of discrimination or retaliation because – even in Plaintiff's own allegations --- there is no evidence to support plaintiff's conclusory assertions that any CBP supervisor discriminated against him because of his race and gender.   Similarly, there is no evidence to support his conclusory allegations that the various actions taken regarding Plaintiff were retaliatory.   Second, even assuming plaintiff could establish a *prima facie* case, defendant has legitimate, non-discriminatory reasons for the actions taken regarding plaintiff, and the reasons are not a pretext to discrimination.   Third, plaintiff cannot establish the requisite elements of a hostile work environment.  As a result, this Court should grant Defendant's motion for summary judgment on all of Plaintiff's claims.

## STATEMENT OF FACTS

For a complete statement of the material undisputed facts and underlying evidentiary support, defendant respectfully refers the Court to Defendant's Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 and the accompanying declarations and exhibits.   See Defendants' Statement of Undisputed Material facts Pursuant To Local Civil Rule 56.1 (56.1 Stmt.).   In the interest of brevity, the facts are not repeated in full here.

## LEGAL STANARDS PERTAINING TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

### A.  STANDARD FOR SUMMARY JUDGMENT IN TITLE VII CASES

Under Federal Rule of Civil Procedure 56(c), summary judgment is warranted when, viewing the evidence in the light most favorable to the non-movant, the Court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

See Fed. R. Civ. P. 56; Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 457 (1992).
The non-movant must offer evidence that demonstrates that there are issues of fact that must be
decided by a fact finder because they may reasonably be decided in favor of either party.
Campanaro v. City of Rome, 999 F. Supp. 277, 279 (N.D.N.Y. 1998).  However, "mere
conclusory allegations or denials" in legal memoranda or oral argument are not evidence and
cannot by themselves create a genuine issue of material fact where none would otherwise exist.
Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980) (citations
omitted).   To survive a motion for summary judgment, the non-movant must do more than present
evidence that is merely colorable, conclusory or speculative.  See Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 249-50 (1986).

Factual disputes will not necessarily defeat a motion for summary judgment unless those
factual disputes are material to the issues before the court.   Indeed, "[o]nly disputes over facts that
might affect the outcome of the suit under the governing law will properly preclude the entry of
summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."
Anderson, 477 U.S. at 248.   "The mere existence of factual issues - where those issues are not
material to the claims before the court - will not suffice to defeat a motion for summary judgment."
Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).

"[T]he salutary purposes of summary judgment – avoiding protracted, expensive and
harassing trials – apply no less to discrimination cases than to . . . other areas of litigation."
Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

**B. STANDARDS FOR EVALUATING PLAINTIFF'S CLAIMS OF
DISCRIMINATION AND RETALIATION UNDER TITLE VII – THE
MCDONALD DOUGLAS FRAMEWORK**

3

In evaluating discrimination and retaliation claims brought under Title VII, courts apply the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).   Kirkland v. Cablevision Systems, 13-3625-cv, 2014 WL 3686090, *1-2 (2d Cir. July 25, 2014) (both Title VII discrimination and retaliation claims are subject to the McDonnell Douglas burden-shifting standard).   Under this framework the ultimate burden of persuasion "remains at all times with the plaintiff."   Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981). In Burdine, the Supreme Court reiterated the McDonnell Douglas framework for analyzing the plaintiff's burden in these cases as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination.   Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection."   Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Id. at 252-53 (quoting McDonnell Douglas, 411 U.S. at 802-04).

If the plaintiff succeeds in presenting a *prima facie* case, then the defendant may rebut that showing by articulating a legitimate, nondiscriminatory reason for the employment action. Burdine, 450 U.S. at 254; Shumway v. UPS, 118 F.3d 60, 63 (2d Cir. 1997).   At this point, it is the Plaintiff's burden to prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."   Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253)).

## **ARGUMENT**

## **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS OF DISCRIMINATION, RETALIATION, AND HOSTILE WORK**

## ENVIRONMENT

Plaintiff brings claims of discrimination and retaliation against Defendant.   Specifically, Plaintiff states, in conclusory fashion, that the four challenged agency actions described above were motivated by discrimination against him because of his race (Hispanic) and gender (male). There is simply no evidence to support this allegation.   Plaintiff also claims that the four challenged agency actions were motivated by retaliation.   There is, however, no evidence -- not even in plaintiff's own testimony -- to support this assertion.   Finally, even assuming plaintiff can establish a *prima facie* case of discrimination and/or retaliation, as discussed below, defendant has non-pretextual legitimate non-discriminatory reasons for their actions.

### A.  PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION

Title VII prohibits an employer from discrimination against any individual because of such individual's race or sex.   42 U.S.C. § 2000e-2(a)(1).   To maintain claims for discrimination under Title VII, a plaintiff must first establish a *prima facie* case, which consists of the following elements:   (1) membership in a protected class; (2) qualification for a position; (3) adverse action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination.   See Rozenfeld v. Department of Design and Construction of City of New York, 875 F. Supp. 2d 189, 202 (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000)). Plaintiff must establish all four elements to establish a *prima facie* case.   See Clemmons v. Stuyvesant High School, No. 00 Civ. 4158, 2006 WL 4888057, at *6 (S.D.N.Y. Oct. 12, 2006). In this case, even assuming *arguendo* that Plaintiff could establish the first three elements, Plaintiff cannot establish the fourth element of *prima facie* discrimination claim for any of the four

challenged agency actions.[3]

The first challenged agency action arose out of Plaintiff's refusal to work his scheduled shift on Thanksgiving Day 2007, which resulted in a one day suspension based on Plaintiff's refusal to work his assigned shift and his arguing with his supervisor about it afterwards.   Plaintiff asserts that assigning him to work on Thanksgiving Day 2007 and New Years' Day 2008 was based on discriminatory motives because Supervisor Sachdeva[4] did not schedule two other officers, "F" and "V,"[5] to work on any federal holidays during that same time period.   Ex. A. According to Plaintiff, holidays work assignments are typically determined based on seniority, and these two individuals of different races were not senior to him.

Plaintiff can establish an inference of racial or gender discrimination by showing that similarly situated employees of a different race or gender were treated more favorably.   Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999).   These employees must be similarly situated in "all material respects."   Brown v. Daikin America Inc., 756 F.3d 219, 230 (2d Cir. 2014).

Even assuming that the employees Plaintiff identified were similarly situated to Plaintiff "in all material respects" with the exception of race and/or gender, Plaintiff's claim fails because these purported comparators were required to work on federal holidays in 2007.   As an initial matter, Officers F and V are both men, and therefore, cannot serve as comparators for

---

[3] Defendant assumes, for the purpose of this motion only, that his assignments on holidays in 2007, the suspension following his discussion with his supervisor in 2007, his February 2009 re-assignment to passenger processing, and his two suspensions in 2012 constitute adverse employment actions.

[4] Plaintiff also claims he was assigned holidays by Supervisor Sachdeva, whom he later complained created a hostile work environment for him.   These allegations are discussed in more detail supra.   There is, however, no evidence supporting a discriminatory motive on the part of Supervisor Sachdeva.

[5] These individuals are identified by their initials for privacy reasons.

6

discrimination based on gender.   Brown, 756 F.3d at 230 (employees must be similar situated except for protected characteristics).    Further, Plaintiff's allegations of discrimination are unfounded because both Officer F and Officer V were assigned to work holidays in 2007. 56.1 Stmt., ¶¶ 26, 28.   Specifically, Officer F worked Christmas Eve 2007 and New Year's Day 2008. 56.1 Stmt., ¶ 26.   Officer V worked on Thanksgiving Day 2007, Christmas Eve 2007, Christmas Day 2007, and New Year's Day 2008.   56.1 Stmt., ¶ 28.    Unlike Plaintiff, both Officer F and Officer V actually reported for work on the days of their federal holiday assignments. 56.1 Stmt., ¶¶ 26, 28. Other than Plaintiff's conclusory statements, which are not adequate to defeat a motion for summary judgment, Plaintiff presents no evidence of his allegations that he was assigned to work on federal holidays and others were not.   Therefore, plaintiff cannot establish that he was discriminated against based on race or gender when he was assigned to work holidays in 2007 based on these comparators, and there is no other evidence to support Plaintiff's conclusory claim of discrimination.

Plaintiff also cannot show an inference of discrimination based on race or gender when he was suspended after arguing with his supervisor about his holiday assignments on December 29, 2007.   After Supervisor Sachdeva asked to discuss the issue with Plaintiff, the two engaged in a "heated" conversation that left Supervisor Sachdeva feeling physically threatened.   56.1 Stmt., ¶¶ 39-44.   Chief Laura Rios, who supervises Supervisor Sachdeva, investigated into Plaintiff's conduct after learning of the December 29, 2007 incident. 56.1 Stmt., ¶¶ 50, 52-53.   Again, Plaintiff present no evidence other than his conclusory statements that Chief Rios, who, like plaintiff, is Hispanic, made the decision to initiate discipline for any discriminatory purpose.   56.1 Stmt., ¶¶ 51, 53.   Chief Rios recommended that Plaintiff be suspended based solely on his inappropriate conduct, and Assistant Area Director Robert Meekins adopted Chief Rios'

recommendation, as Assistant Director Meekins who independently concluded that Plaintiff's conduct warranted a two-day suspension. 56.1 Stmt., ¶¶ 54-55. There are no allegations and no evidence of discrimination on the part of Assistant Director Meekins.  Finally, Area Director Camille Polimeni made the final decision to suspend Plaintiff.  56.1 Stmt., ¶¶ 89-90. Area Director Polimeni also mitigated the suspension from two days to one day, based on her independent review of Plaintiff's conduct. Id. There is no evidence of discriminatory intent on the part of Area Director Polimeni.   As a result, Plaintiff does not and cannot put forth any evidence that the referral for discipline, the subsequent reviews of his behavior by various supervisors, or their conclusions that the suspensions were warranted, were the result of discrimination based on Plaintiff's race or gender.

Similarly, there is no evidence that supports Plaintiff's assertion that his participation in a January 2009 process to request his preferred assignment, and the subsequent results, was the result of discrimination.  The Bid Rotation Process ("BRP") process works by seniority, and Plaintiff bid for positions that were filled with officers with greater seniority.   56.1 Stmt., ¶¶ 93, 106. Further, the BRP process is entirely voluntary, and Plaintiff chose to participate in it. 56.1 Stmt., ¶¶ 96.   Additionally, as soon as Plaintiff's requested assignments became available, he was transferred off a waiting list to those assignments, ultimately being transferred to his first choice assignment by October 2009. 56.1 Stmt., ¶¶ 111-115. There simply is no evidence of discrimination in this process.

Lastly, plaintiff cannot show that either his two-day suspension from his July 2011 failure to report to his assigned booth or his ten-day November 2011 suspension for failing to be prepared for his overtime assignment were, in any way, the result of discrimination. Like his earlier suspension, these suspensions were finalized after review by CBP managers detached from any

8

immediate supervisor with whom Plaintiff took issue.  56.1 Stmt., ¶¶ 148-150.  There is no evidence to support the allegation that these managers had reason to discriminate against Plaintiff in any way.

Notably absent from all of Plaintiff's allegations regarding the challenged agency actions is any evidence of discriminatory animus.  Even Plaintiff's testimony is devoid of any facts that either directly establish, or implicitly indicate, any discriminatory intent underlying the challenged agency actions.  Instead, all of the evidence establishes that the challenged actions were merely the agency's response to Plaintiff's own failure to properly perform his duties or inappropriate work conduct.  Accordingly, Defendant is entitled to summary judgment be Plaintiff's conclusory assertions of discrimination are insufficient at this stage of the litigation to even make out a *prima facie* case of discrimination.  See, e.g., Richardson v. Newburgh Enlarged City Sch. Dist., 984 F. Supp. 735, 744 (S.D.N.Y. 1997) (Summary judgment appropriate in light of conclusory argument that Plaintiff was discriminated against based on race).

### B.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

Similarly, Plaintiff cannot establish a *prima facie* case of retaliation.  The anti-retaliation provision of Title VII makes it unlawful for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  While Title VII's substantive provision addresses discrimination based on an individual's racial, ethnic, religious or gender-based status, *i.e.*, who he is, the anti-retaliation provision "seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." Burlington Northern & Santa Fe Rwy. Co. v. White, 548 U.S. 53, 63 (2006).

To present a *prima facie* case of retaliation, a plaintiff "must present[] sufficient to permit a rational trier of fact to find" that: (1) he engaged in protected activity; (2) the employer was aware of such activity; (3) the employer took action which a reasonable employee would consider materially adverse; and (4) there was a causal connection between the protected activity and the challenged action (*i.e.*, that a retaliatory motive played a part in the adverse employment action). Mohammed v. New York City Dept. of Educ., 932 F. Supp. 2d 420, 429 (E.D.N.Y. 2013) (citing Cifra v. G.E. Co., 252 F.3d 205, 216 (2d Cir. 2003)); see also Burlington Northern, 548 U.S. at 68. Plaintiff can show that retaliatory motive played a part in any challenged actions either by showing that the protected activity was closely followed by retaliatory treatment or circumstantial evidence such as disparate treatment, or by direct evidence of retaliatory animus. Forde v. Donahoe, 10-CV-2445 (CBA), 2012 WL 1020038, *11 (E.D.N.Y. Mar. 26, 2012)(citing Gordon v. New York City Bd. Of Educ, 232 F.3d 111, 117 (2d Cir. 2000)).

> 1. **Plaintiff Cannot Establish Causation Regarding his 2007 Holiday Assignments and Subsequent Proposed Suspension, Because Plaintiff Had Yet To Engage In Protected Activity When These Actions Took Place**

Plaintiff cannot establish any of the four elements of retaliation for his 2007 federal holiday work assignments. The earliest point at which Plaintiff engaged in protected activity was on April 18, 2008 when he filed his complaint about Supervisor Sachdeva. 56.1 Stmt., ¶¶ 58-60. However, the decisions to schedule plaintiff on Thanksgiving and Christmas, and the proposal to suspend Plaintiff for two days, all took place prior to April 18, 2008. 56.1 Stmt., ¶¶ 24, 55. Indeed, Plaintiff engaged first engaged in allegedly protected activity in response to the proposed two-day suspension. 56.1 Stmt., ¶ 58. Therefore, Plaintiff cannot show he engaged in a protected activity because the alleged protected activity he engaged in occurred after the challenged 2007 federal holiday work assignments and after his one day suspension was

proposed.[6]   See St. Juste v. Metro Plus Health Plan, 10-CV-4729 (MKB), 2014 WL 1266306, *32

(E.D.N.Y. Mar. 28, 2014) (granting summary judgment where alleged retaliatory acts took place

before protected activity).   Therefore, Plaintiff cannot establish any requisite elements of a *prima

facie* case.

> **2. Plaintiff Cannot Show Causation For The Other Three Incidents Because, In Each Instance, There Is Insufficient Temporal Proximity To Infer Causation Between The Alleged Protected Activity And The Alleged Retaliation**

For the purposes of this memorandum, defendant assumes *arguendo* that (a) the April 18,

2008 complaint and the April 29, 2011 filing of the instant lawsuit constitute protected activity, (b)

the challenged agency actions (with the exception of the 2007 holiday work assignment and

related suspension) took place after plaintiff engaged in either or both of these activities, and (c)

CBP management knew of this protected activity. Despite these assumptions, Plaintiff

nevertheless fails to establish a *prima facie* case of retaliation regarding any of these incidents,

because there is no evidence from which a factfinder can draw an inference that the underlying

adverse actions were taken for retaliatory motives.

Absent direct evidence of retaliation, Plaintiff must rely on the temporal proximity of these

incidents from his engaging in protected activity in order to establish a prima facie case of

retaliation.   The Supreme Court has recognized that "[t]he cases that accept mere temporal

---

[6] Plaintiff may argue that his proposed suspension was finalized on May 21, 2009, which was after he filed his April 18, 2008 complaint against Supervisor Sachdeva, and therefore he is entitled to an inference of retaliation. As discussed in more detail supra, plaintiff cannot establish an inference of retaliation where there is a greater than a year gap between plaintiff's complaint and the alleged retaliation.   See Harrison v. U.S. Postal Service, 450 Fed. Appx. 38 (2d Cir. 2011)("several months" is insufficient to support the necessary causal connection).   Further, plaintiff cannot rely on temporal proximity to serve as an inference of retaliation where, as here, the discipline process started prior to the protected activity.   Slattery v. Swiss Reins. Amer. Corp., 248 F.3d 87, 95 (2d Cir. 2001)( "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); Padob v. Entex Information Serv., 960 F. Supp. 806, 814 (S.D.N.Y. 1997) (firing of plaintiff *three months* after filing EEO charge did not establish a causal connection; plaintiff had been placed on a "performance improvement plan" prior to filing the charge).

proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotation marks and citations omitted); Harrison, 450 Fed.Appx. 38 (holding that "several months" was too long to be very close); Forde, 2012 WL 1020038 at *11 ("[I]n order for temporal proximity to establish a casual connection, the retaliatory acts must occur in 'as few as three months.'") (quoting Nicastro v. Runyon, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999)); Kouakou v. Fideliscare New York, 920 F. Supp. 2d 391, 399 (S.D.N.Y. 2012) (four to five months "well outside the acceptable outer limits for demonstrating a temporal proximity"); Woods v. Enlarged City School Dist. of Newburgh, 473 F. Supp. 2d 498, 529 (S.D.N.Y. 2007) ("As is evident from the case law in this circuit, in the absence of other evidence of retaliatory motive, . . . a time lapse [of five months] precludes a finding of causal connection between the protected activity and the adverse employment action based on temporal proximity.").

### a. Plaintiff's 2009 Job Bid and Assignment

There is no direct evidence of causation between Plaintiff's alleged protected activity (the April 18, 2008 complaint about Supervisor Sachdeva) and CBP management's decision to allow Plaintiff to participate in the CBP bidding process, and his subsequent assignment to passenger processing. Supervisor Sachdeva, whom Plaintiff alleges orchestrated the campaign of retaliation against him, was not involved in the CBP bidding process. 56.1 Stmt., ¶ 110. Indeed, rather than establish retaliatory motive on the part of CBP management the evidence shows that management felt it was to Plaintiff's benefit to participate in the bidding process, because to do so would give him the opportunity to compete with officers of similar seniority for available assignments. 56.1 Stmt., ¶¶ 92-97. It also bears noting that Plaintiff chose to participate in this voluntary process.

56.1 Stmt., ¶¶ 96-97.

Further, Plaintiff cannot rely on an inference of causation to survive summary judgment. The January 2009 decision to include Plaintiff in the CBP bidding process is almost seven months after he allegedly engaged in protected activity.   56.1 Stmt., ¶¶ 58, 95. This gap in time is too long to establish an inference of causation.   Accordingly Plaintiff cannot establish a *prima facie* case of retaliation for this challenged action.

### b. Plaintiff's Two Day Suspension For Failing To Work In His Assigned Booth And Leaving Work Without Authorization On July 25, 2011

Similarly, there is no direct evidence of causation between his alleged protected activity (the April 18, 2008 complaint against Supervisor Sachdeva and/or the April 11, 2011 filing of this lawsuit) and the two day suspension issued after Plaintiff failed to report to his assigned booth and left work without authorization on July 25, 2011.   Indeed, when dealing with Plaintiff's refusal to work in his assigned booth, culminating in his leaving work early because he was feeling "sick," it is undisputed that Supervisor Cano had no knowledge of Plaintiff's alleged protected activity, nor had he spoken with Supervisor Sachdeva about the Plaintiff.   56.1 Stmt., ¶¶ 148-150. Additionally, it was ultimately Acting Port Director Wayne Biondi who finalized Plaintiff's suspension, and there is no evidence that Acting Director Biondi acted with retaliatory animus, or even knew of Plaintiff's alleged protected activity.   56.1 Stmt., ¶ 146.

Even if Plaintiff relies on an inference of causation based on temporal proximity, his retaliation claim still fails.   Plaintiff's April 18, 2008 complaint against Supervisor Sachdeva took place over three and a half years before the November 29, 2011 suspension decision. 56.1 Stmt., ¶ 58, 143.   Similarly, the April 29, 2011 filing of the instant lawsuit was over seven months prior to the November 29, 2011 suspension decision. 56.1 Stmt., ¶¶ 143, 176.   Under both scenarios, the

13

length of time that passed between the protected conduct and the alleged retaliatory action is far too long to establish an inference of causation. As such, Plaintiff cannot establish a *prima facie* case of retaliation regarding his two day suspension.

### c.  Plaintiff's Ten Day Suspension For Failing To Follow His Supervisor's Instructions On November 25, 2011

For similar reasons, Plaintiff cannot establish causation between his alleged protected activity (the April 18, 2008 complaint against Supervisor Sachdeva and/or the April 11, 2011 filing of this lawsuit) and the proposed 14 day suspension (later reduced to 10 days) stemming from being unprepared for his November 25, 2011 overtime shift.  Again, Plaintiff offers no direct evidence that this suspension was motivated by retaliation.  Indeed, Commander Youngs, who addressed Plaintiff's lack of preparedness, had no knowledge of Plaintiff's alleged protected activity, nor had he ever spoken with Supervisor Sachdeva about the Plaintiff.  56.1 Stmt., ¶¶ 168-170. Additionally, it was Acting Port Director John Mirandona who finalized Plaintiff's suspension, and there is no evidence that Acting Director Mirandona acted with retaliatory animus, or even knew of Plaintiff's alleged protected activity. 56.1 Stmt., ¶ 166.

As such, Plaintiff once again must rely on an inference of causation and the claim again fails.  The initial proposal to suspend plaintiff for fourteen days (later reduced to ten days) was decided on February 22, 2012, which was four years after Plaintiff's April 18, 2008 complaint against Supervisor Sachdeva.  56.1 Stmt., ¶ 58, 162.  Similarly, the April 29, 2011 filing of this lawsuit took place over ten months prior to the February 22, 2012 proposed suspension decision. 56.1 Stmt., ¶¶ 162, 176.  In both cases, the length of time that passed is far too long for Plaintiff to survive summary judgment based on an inference of causation.  As such, Plaintiff cannot establish a *prima facie* case of retaliation regarding this suspension or any of his claims.

14

## C. EVEN ASSUMING THAT PLAINTIFF COULD ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION OR RETALIATION, DEFENDANT HAS LEGITIMATE, NON-DISCRIMINATORY REASONS FOR TAKING ACTION

Assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination or retaliation, Defendant is nevertheless entitled to summary judgment because there were non-pretextual, legitimate, non-discriminatory reasons for the challenged agency actions.

Assuming *arguendo* that Plaintiff met his initial burden to establish a *prima facie* case of discrimination and/or retaliation (which Defendant denies), then the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for the challenged action.  See Mohammed, 932 F. Supp. 2d at 429; see also Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Once the Defendant does so, the presumption of discrimination or retaliation arising from the *prima facie* case "drops from the picture."  St. Mary's Honor Ctr v. Hicks, 509 U.S. 502, 510-11 (1993); Johnson v. New York City Dept. of Educ., 10-CV-2604 (WFK), 2014 WL 4090844, *7 (E.D.N.Y. Aug. 19, 2014).   Instead, the Plaintiff must then "point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002); see also Aulicino v. New York City Dep't of Homeless Services, 580 F.3d 73, 80 (2d Cir. 2009).[7]   If Plaintiff is unable to show that the articulated reason is pretextual, Defendant is entitled to summary judgment on plaintiff's claims of discrimination and retaliation.   White v. Eastman Kodak Co., 368 Fed.Appx. 200 (2d. Cir. 2010)(citing Leibowitz v. Cornell Univ., 584 F.3d 487, 498-99 (2d Cir. 2009)).

---

[7] Notably, temporal proximity alone is not sufficient to defeat summary judgment at the pretext stage.   See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).   Indeed, even where the Court has found a *prima facie* case of retaliation based on temporal proximity, that same temporal proximity is insufficient to show pretext. Abrams v. Department of Public Safety, No. 13-111-cv, 2014 WL 4191178 (2d Cir. Apr. 29, 2014).

Here, Defendant is entitled to summary judgment because there are legitimate, non-discriminatory reasons for each of the challenged agency actions and there is no evidence upon which to conclude that any of these reasons are pretextual.

**1. In 2007, Plaintiff Was Scheduled To Work Holidays Based On CBP Policy, And Plaintiff Was Suspended After An Investigation Revealed That He Had Engaged In Insubordination**

Defendant has legitimate, non-discriminatory reasons for assigning Plaintiff to work on federal holidays in 2007. Supervisor Sachdeva assigned the mail branch employees to federal holiday shifts that year. 56.1 Stmt., ¶ 18. She assigned various officers based on non-discriminatory criteria including need, officer safety, and officer seniority. 56.1 Stmt., ¶ 20. Based on these criteria, Plaintiff was assigned to work on Thanksgiving Day and New Year's Day, but was given Christmas Day holiday off. 56.1 Stmt., ¶¶ 19, 22 As noted above, Plaintiff's allegation of discrimination is based on Plaintiff's incorrect assumption that Officer F and Officer V were not required to work on holidays, when in fact both worked on federal holidays that year. 56.1 Stmt., ¶¶ 26-28; see also supra at 7. Indeed, rather than evidence discrimination, Officer F and V's assignments corroborate that Supervisor Sachdeva was assigning holiday shifts based on the non-discriminatory criteria she outlined. 56.1 Stmt., ¶ 20.

Further, Plaintiff complained that he also was ultimately assigned to work on Christmas Day 2007. The legitimate, non-discriminatory reason for this assignment was because Plaintiff failed to report for his assigned shift on Thanksgiving Day 2007. 56.1 Stmt., ¶¶ 31-32. CBP policy dictates that, in fairness, when an officer misses an assigned shift on a holiday, they make up for it by being assigned to work the next holiday. 56.1 Stmt., ¶ 34. Pursuant to this policy, when Plaintiff failed to show on Thanksgiving, he was assigned to work on Christmas. 56.1 Stmt., ¶ 35. Put simply, Plaintiff was assigned a shift on Christmas Day 2007 for no reason other

16

than the policy mandated consequence of his failure to appear for his assigned Thanksgiving Day 2007 shift.

Similarly, the legitimate, non-discriminatory reasons for Plaintiff's one day suspension were based on Plaintiff's heated discussion and argument with Supervisor Sachdeva on December 29 about his holiday work assignments. 56.1 Stmt., ¶¶ 53-54. As Supervisor Sachdeva felt physically threatened by Plaintiff during this discussion and reported it to her boss, Chief Rios, who then investigated the matter and recommended disciplinary action against Plaintiff. 56.1 Stmt., ¶¶ 44, 49, 53. Chief Rios made this recommendation not based on Plaintiff's race or gender, or for retaliatory reasons, but rather based on her finding of Plaintiff's was unprofessional and disruptive actions to his direct supervisor. 56.1 Stmt., ¶ 53. Ultimately, Chief Rios's recommendation was independently reviewed by Assistant Area Director Robert Meekins, who also concluded that Plaintiff acted inappropriately and recommended a two day suspension. 56.1 Stmt., ¶¶ 55-56. The undisputed evidence concerning these recommendations shows that they were not based in discriminatory animus based on Plaintiff's race and gender by Chief Rios (who, like Plaintiff, identifies as Hispanic) and AAD Meekins (who, like plaintiff, is a man),[8] but rather were based on supervisory review of Plaintiff's own inappropriate actions. 56.1 Stmt., ¶¶ 53, 55.

## 2. Plaintiff Was Afforded The Opportunity To Participate In the 2009 CBP Bidding Process And Was Assigned To Posts Throughout The Year Based On His Preferences

Defendant has legitimate, non-discriminatory reasons for allowing Plaintiff to participate in the 2009 bid and rotation process which resulted in Plaintiff's challenged work assignments. Participation in the bid and rotation process was for Plaintiff's benefit as it allowed him the

---

[8] Indeed, rather than acting with retaliatory intent, the CBP final decision maker provided Plaintiff with a favorable result, mitigating a proposed 2-day suspension, to the one day suspension that plaintiff ultimately served. 56.1 Stmt., ¶ 90.

opportunity to express preferences for various assignments and increase the likelihood of being placed in an assignment of his interest.  56.1 Stmt., ¶¶ 91-96.  The disqualification of officers with pending disciplinary action is not intended to be a reward to those officers, but a logistical necessity considering their uncertain status.  56.1 Stmt., ¶¶ 94, 102.

Plaintiff was invited to participate in the bidding process because CBP management reasoned that, as Plaintiff's discipline was held in abeyance pending investigation into his allegations of discrimination and retaliation, proposed discipline should not disqualify him from the benefit of participating in the program.  56.1 Stmt., ¶ 103.  Further, Plaintiff was not under any obligation to submit a bid form, but rather voluntarily chose to do so.  56.1 Stmt., ¶¶ 96-97. Plaintiff not only availed himself of the opportunity to bid, but Plaintiff bid for highly competitive spots.  56.1 Stmt., ¶ 97-98, 106. Since the system, by agreement with Plaintiff's union, required officer placement based on seniority, Plaintiff did not have sufficient seniority to be immediately assigned to any of the posts he chose to bid for.  56.1 Stmt., ¶ 106.  As a result, he was transferred, temporarily, to passenger processing in accordance with the results of the bidding process.  56.1 Stmt., ¶¶ 107-108.  Plaintiff remained in passenger processing from February through April 2009, when a position opened up in Advanced Passenger Information Systems (APIS), one of plaintiff's requested assignments, Plaintiff received it because he was the most senior officer on the standby list.  56.1 Stmt., ¶¶ 111-113. Further, when plaintiff's first choice of assignment, cargo operations, opened up in October 2009, plaintiff was reassigned to his first choice of assignment. 56.1 Stmt., ¶¶ 114-115. Because Plaintiff voluntarily chose to participate in the bid process, and the bid process was administered in accordance with Plaintiff's seniority, ultimately resulting in his assignment to his first choice assignment, Plaintiff cannot establish discrimination and/or retaliation in conjunction with this challenged action.

**3.   Plaintiff Was Suspended For Two Days Based On His Refusing To Report To His Assigned Booth And Leaving Work Without Following Proper Procedures**

Plaintiff was suspended for two days starting on June 27, 2012 because, after investigation and appeal, he was found to have failed to follow supervisory instructions, was absent without leave, and engaged in unprofessional conduct during a July 25, 2011 shift.   56.1 Stmt., ¶¶ 126-135.  There simply is no evidence to support Plaintiff's contention of retaliation for this challenged action.

On July 25, 2011, Supervisor Cano, who was Plaintiff's supervisor that day, asked Plaintiff to move from passenger processing booth 42, where Plaintiff unilaterally decided to start his shift, to booth 32, which was Plaintiff's actual work assignment that day.   56.1 Stmt., ¶¶ 120-122, 126. Plaintiff refused, citing, *inter alia*, that another officer's belongings were in booth 32, and Plaintiff refused to remove them.   56.1 Stmt., ¶¶ 127-130.   Plaintiff later explained that he would not remove the other CBPO's bags because he was "not a janitor." 56.1 Stmt., ¶ 130.   Instead, Plaintiff decided to go home "sick," and left without permission and without a required leave form (OPM Form 71). 56.1 Stmt., ¶¶ 131-137.

Based on these undisputed actions, Watch Commander Chase Youngs and Acting Port Director Wayne Biondi, found that Plaintiff's failure to obey instructions and leaving without permission warranted a two day suspension. 56.1 Stmt., ¶¶ 142, 146.   There is no evidence on which to infer that either of these CBP management officials, who were not involved in Plaintiff's earlier dispute with Supervisor Sachdeva, discriminated or retaliated against him in any way.

**4.   Plaintiff Was Suspended For Ten Days In 2012 Because He Reported To His Overtime Shift Unprepared**

Plaintiff was suspended for ten days starting on May 14, 2012 because, after investigation and appeal, he was found to fail to follow supervisory instructions during a November 25, 2011

shift.   Plaintiff claims that this suspension was retaliatory, but there is no evidence to support that contention.

Instead the evidence shows that on November 25, 2011, Plaintiff signed up for overtime duty, reported Commander Youngs at 7:00 p.m., but refused to drive out on the airport tarmac to the JFK Medical Facility, which was his assignment.   56.1 Stmt., ¶ 156.   Instead, Commander Youngs reassigned Plaintiff to cover a shift in passenger processing instead, but Plaintiff did not perform this duty either because he did not have his passenger stamp with him.[9]  56.1 Stmt., ¶¶ 157-158.   Accordingly, Commander Young cancelled Plaintiff's overtime, and Plaintiff went home. 56.1 Stmt., ¶¶ 160-161.

Both Assistant Port Director John Mirandona and Port Director Brian Humprhy, found that Plaintiff failed to obey Supervisor Youngs's directions and suspended him. 56.1 Stmt., ¶¶ 162-166. Again, there is no evidence which either directly establishes, or upon which to infer that either of these CBP management officials, who were not involved in Plaintiff's earlier dispute with Supervisor Sachdeva, discriminated or retaliated against Plaintiff in any way.[10]   In conclusion, there is simply no evidence that would allow a rational trier of fact to conclude that any of the actions taken regarding Plaintiff were a pretext to discrimination.

### D.  PLAINTIFF CANNOT ESTABLISH A HOSTILE WORK ENVIRONMENT

Plaintiff also claims he was subjected to a hostile work environment because of his race, gender, and prior protected activity.   This claim is apparently based on allegations of discreet incidents Plaintiff deemed inappropriate.   These alleged discrete acts cannot form the basis of a

---

[9] Plaintiff claims he did not have his stamp with him because he did not expect to be assigned to passenger processing, but CBP regulations require Plaintiff to have all of his equipment with him at all times.
[10] Indeed, the final decision maker, Port Director Humphry took action favorable to Plaintiff, mitigating the proposed suspension from fourteen to ten days. 56.1 Stmt., ¶ 166.

hostile work environment claim.

To maintain a hostile work environment claim, a plaintiff must demonstrate that: (1) the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." Carrasco v. Lenox Hill Hosp., No. 99-CV-0924, 2000 U.S. Dist. LEXIS 5637, at *19 (S.D.N.Y. Apr. 20, 2000) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996) (citations omitted)); Feingold v. State of New York, 366 F.3d 138, 149-50 (2d Cir. 2004).

In establishing discriminatory intimidation, ridicule and insult, the plaintiff must offer facts that would demonstrate that the allegedly hostile conduct was based on his protected characteristic.   See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80-81 (1998).   "[I]t is 'axiomatic' that in order to establish a [race]-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [his race]."   Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (citations omitted).   "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimin[ation] . . . because of . . . [a protected characteristic]."   Oncale, 523 U.S. at 80 (quoting Title VII).   Sexual harassment can also create a hostile work environment.   D'Annunzio v. Ayken, Inc., 11-CV-3303 (WFK), 2014 WL 2600322, *7 (E.D.N.Y. Jun. 10, 2014).   Such claims "may include unwelcome sexual advances…and other verbal or physical conduct of a sexual nature."   Id.

Whether an environment may be considered sufficiently hostile or abusive to support a claim for relief under Title VII is to be measured by the totality of the circumstances.   See Harris, 510 U.S. at 23.   Courts must consider a variety of factors, including the frequency and severity of

the discriminatory conduct, whether such conduct is physically threatening or humiliating, or merely an offensive utterance, and whether the conduct unreasonably interferes with the plaintiff's work performance.   See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

These factors must be evaluated from an objective and subjective perspective.   See Harris, 510 U.S. at 21-22; Feingold, 366 F.3d at 150.   To satisfy the objective component of the analysis, the conduct must be offensive or pervasive enough to create an environment that a reasonable person would find hostile or abusive because of his protected characteristic.   See Harris, 510 U.S. at 21-22 ("[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview"); Oncale, 523 U.S. at 81 ("the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances'"); Torres v. Pisano, 116 F.3d 625, 631 (2d Cir. 1997).   Similarly, to satisfy the subjective standard, plaintiff must actually perceive his employment environment as abusive. See Harris, 510 U.S. at 21-22.

To show that a plaintiff was subjected to severe or pervasive conduct that created an objectively hostile or abusive environment, a plaintiff must demonstrate that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous to have altered the conditions of his working environment.   See Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000) (citations omitted). "[O]ccasional episodes of harassment" are not actionable as a hostile work environment.   See Feingold, 366 F.3d at 150 ("As a general rule, incidents must be more than 'episodic; thus must be sufficiently continuous and concerted in order to be deemed pervasive.'") (quoting Alfano, 294 F.3d at 365); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) ("'isolated remarks or occasional episodes of harassment will not merit relief

22

under Title VII; in order to be actionable, the incidents of harassment must occur in concert with a regularity that can reasonably be termed pervasive'") (citations omitted); see also Torres, 116 F.3d at 631 (isolated and minor acts of harassment are not actionable).

Here, Plaintiff's hostile work environment claim fails as a matter of law.   First, in support of his claim, Plaintiff alleges that the discrete alleged acts of retaliation (*i.e.*, Plaintiff's assignments to work holidays, suspensions, and allegedly unfavorable work assignments, etc.) created a hostile work environment.   These discrete retaliatory actions are not the type of severe and pervasive conduct as contemplated by the courts in establishing a hostile work environment. The Supreme Court has described hostile work environment claims as follows:

> Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct.   The "unlawful employment practice" therefore cannot be said to occur on any particular day.   It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002) (citations omitted).

Similarly, Plaintiff fails to demonstrate that any of the alleged employment actions taken were based on his race or gender.   The record is devoid of any evidence that any member of management harbored racial or gender animus.   Because there is no evidence that Plaintiff's race or gender bore on the conduct of his supervisors or managers, as discussed supra, Plaintiff's hostile work environment claim based on race or gender should be dismissed for failure to establish a *prima facie* case.

Additionally, Plaintiff also alleges that on one occasion coworkers made discreet, isolated offensive remarks regarding Puerto Ricans.   56.1 Stmt., ¶ 84-87.   Plaintiff did not initially report this incident to a supervisor, and once he ultimately did, the allegations were investigated.   Id. Even  assuming  that  these  offensive,  isolated  comments  actually  were  made  by  Plaintiff's

coworkers, they are the kind of discreet offensive comments that do not rise to the level of an actionable hostile work environment.

Finally, Plaintiff may claim that in 2006 (a year before any of the challenged agency actions), Supervisor Sachdeva gave him "inappropriate attention"[11] and that constituted a hostile work environment.   Although this allegation later was found to be uncorroborated and unsubstantiated, even assuming *arguendo* it is true, Plaintiff's claim still should fail.   The alleged inappropriate attention occurred in September 2006, and consisted of a series of three incidents each of involved Supervisor Sachdeva and each of which lasted two or three seconds.   56.1 Stmt., ¶¶ 61-65.   The first two incidents consisted of Supervisor Sachdeva sitting near Plaintiff in the lunch room and allegedly making some kind of eye contact (*e.g.*: looked at him "seductively" and "batted her eyes").  Id. The third incident was similar, except that during this incident, Plaintiff alleges, Supevisor Sachdeva also briefly touched his thigh. 56.1 Stmt., ¶ 66. After Plaintiff rebuffed her advance, there was no further incidents between the two until December 29, 2007, when they had a "heated" discussion about Plaintiff's holiday assignments. 56.1 Stmt., ¶ 74.

Quite simply, the first two incidents are not objectively hostile at all, even if Plaintiff perceived Supervisor Sachdeva's eye contact as seductive.   See Gertskis v. New York City Dept. of Health and Mental Hygiene, 2009 WL 812263, *6-7 (S.D.N.Y. 2009) (dismissing sexual harassment claim where Plaintiff complained of unwanted facial expressions, and failed to report the alleged harassment until considerably later); aff'd 375 Fed.Appx. 138 (2d Cir. 2010).   While the third incident allegedly involved unwanted physical contact, the brief contact does not rise to the level of being an adequately hostile and pervasive sexual environment to form a legally

_____

[11] It is important to note that Plaintiff never raised these allegations at any point until April 18, 2008, in response to his being suspended for insubordination after his December 29, 2007 encounter with Supervisor Sachdeva. 56.1 Stmt., ¶ 60.

cognizable hostile work environment.   Accordingly, Plaintiff's hostile work environment claim must fail.

## **CONCLUSION**

For all the foregoing reasons, defendant Johnson respectfully request that this Court grant them summary judgment and dismiss the amended complaint in its entirety, together with such other and further relief as this Court may deem just and proper.

Dated:  Brooklyn, New York
        September 22, 2014

LORETTA E. LYNCH
United States Attorney
Attorney for Defendant United States
271 Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201


By:     _____/s/_____
        Seth D. Eichenholtz
        Assistant United States Attorney
        (718) 254-7036
        seth.eichenholtz@usdoj.gov

25