UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ROBERT FIGUEROA,                                       :
                                                       :
                    Plaintiff,                         :
                                                       :          **DECISION AND ORDER**
          -against-                                    :          11-CV-2087 (WFK) (RML)
                                                       :
JEH JOHNSON,[1] Secretary, U.S. Department             :
of Homeland Security,                                  :
                                                       :
                    Defendant.                         :
--------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Robert Figueroa ("Plaintiff") brought a complaint against Jeh Johnson as the Secretary of the United States Department of Homeland Security ("Defendant") alleging discrimination and retaliation on the basis of his male sex or gender and Hispanic national origin as well as a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"). Dkt. 1 ("Complaint"). In response to Defendant's summary judgment motion, Plaintiff raised a claim of *quid pro quo* sexual harassment for the first time. Dkt. 48 ("Memo in Opp.") at 12-13. Defendant moves for summary judgment on the basis that Plaintiff has failed to establish a prima facie case of either discrimination or retaliation, in the alternative, Defendant had legitimate, non-discriminatory reasons for taking the actions Plaintiff challenges, Plaintiff has failed to establish a hostile work environment, and Plaintiff has failed to establish *quid pro quo* sexual harassment. Dkt. 43 ("Memo for SJ"); Dkt. 49 ("Reply"). For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The following facts are either undisputed or described in the light most favorable to

Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d

Cir. 2005).

Plaintiff is an officer with United States Customs and Border Protection ("CBP"), an

agency of the United States Department of Homeland Security. Dkt. 50 ("Compiled Rule 56.1

Stmt") at ¶ 1. Plaintiff's title is "Customs and Border Protection Officer" ("CBPO"). *Id.* at ¶ 6.

---

[1] The Honorable Jeh Johnson is the current Secretary of Homeland Security, having taken office on December 23, 2013. Accordingly, he is substituted for Janet Napolitano as the named defendant. *See* Fed. R. Civ. P. 25(d)(1).

1

Plaintiff identified himself as a Hispanic male of Puerto Rican descent. *Id.* at ¶ 2. Plaintiff began to work for the agency that would become CBP on July 9, 2001, and has worked at John F. Kennedy International ("JFK") Airport in Queens New York since 2002. *Id.* at ¶¶ 3, 5.

**2007 Holiday Work Assignment Incident and Suspension**

In 2006 and 2007, Plaintiff was assigned to the Mail Branch, where Senior Customs and Border Protection Officer ("SCPBO") Kompel Sachdeva was one of his supervisors. *Id.* at ¶ 15. In 2007, the federal holidays during the winter were Thanksgiving, Christmas Eve, Christmas, and New Year's Day. *Id.* at ¶ 19. SCBPO Sachdeva was in charge of assigning holiday shifts based on, among other factors, seniority. *Id.* at ¶ 20.

Plaintiff was assigned to work Thanksgiving 2007 and New Year's Day 2008. *Id.* at ¶ 22. Plaintiff contested his holiday assigned to several CBP supervisors, including SCPBO Sachdeva, as well as his union representative, but his assignment was not changed. *Id.* at ¶¶ 29-30. Nonetheless, Plaintiff did not show up for work on Thanksgiving 2007. *Id.* at ¶ 31. Plaintiff claims he was sick that day. *Id.* at ¶ 32. According to CBP policy, Plaintiff was assigned to work the next holiday, Christmas 2007. *Id.* at ¶¶ 34-35. Plaintiff, however, failed to show up for work on Christmas 2007. *Id.* at ¶ 36. Plaintiff claims he missed work because his car would not start. *Id.* at ¶ 37.

On December 29, 2007, SCBPO Sachdeva and Plaintiff had a conversation during which Plaintiff discussed his displeasure with his 2007 holiday work assignment schedule. *Id.* at ¶¶ 38, 40. The argument became "heated." *Id.* at ¶ 41. Plaintiff subsequently left work prior to the end of his shift that night because he felt ill. *Id.* at ¶ 46. Plaintiff was charged two hours of sick leave for leaving work early. *Id.* at ¶ 48.

SCBPO Sachdeva sent an email to Chief Laura Rios after the incident describing Plaintiff's conduct and ultimately submitted a formal statement about the incident. *Id.* at ¶¶ 49-51. After receiving SCBPO Sachdeva's statement, Chief Rios requested a statement from Plaintiff. *Id.* at ¶ 52. After reviewing both statements, Chief Rios recommended disciplinary action against Plaintiff for his behavior. *Id.* at ¶ 53. A review of the underlying incident was then undertaken by Assistant Area Director Robert Meekins, who charged Plaintiff with inappropriate conduct towards a supervisor and proposed a 2-day suspension on March 17, 2008. *Id.* at ¶¶ 54-55; *see also* Dkt. 44 ("Eichenholtz Decl.") Ex. G.

On April 18, 2008, Plaintiff sent an email contesting the charge against him and for the first time accusing SCBPO Sachdeva of discriminating against him, creating a hostile work environment, and initiating a campaign of retaliation against him because he had rejected her sexual advances. Compiled Rule 56.1 Stmt at ¶¶ 58, 217. Plaintiff alleged two occasions between September and November 2006 when SCBPO Sachdeva had made eye contact with him and batted her eyes seductively, and a third on which she had touched his leg. *Id.* at ¶ 61, 66. SCBPO Sachdeva denied these allegations, and no other CBPO ever complained about SCBPO Sachdeva. *Id.* at ¶¶ 69-71.

Plaintiff's suspension was held in abeyance while CBP investigated Plaintiff's allegations against SCBPO Sachdeva. *Id.* at ¶¶ 76-77. After an extensive investigation, Plaintiff's allegations were determined to be uncorroborated and unsubstantiated. *Id.* at ¶¶ 77-88. Subsequently, on May 21, 2009, the charges against Plaintiff were sustained by Camille Polimeni, Area Director of JFK Airport, and Plaintiff's suspension was reduced from two days to one day. Eichenholtz Decl. Ex. Q. Plaintiff served a one-day suspension on June 16, 2009. Compiled Rule 56.1 Stmt at ¶ 91.

**Bid, Rotation, and Placement Procedure in January 2009**

In January 2009, Plaintiff participated in the Bid, Rotation, and Placement ("BRP") procedure through which CBP officers can submit assignment preferences and be assigned placements based on preferences and seniority. *Id*. at ¶ 92. Plaintiff states that he was forced to participate in the BRP procedure against his will, although the procedure is generally voluntary. *Id.* at ¶¶ 95-96.

Plaintiff submitted a bid sheet and indicated his preference was to stay in Cargo Operations, where he was then working. *Id.* at ¶¶ 97-98. Plaintiff did not receive any of the six bids he placed and instead was assigned to passenger processing. *Id.* at ¶ 105. Plaintiff did not receive his preferred placement in Cargo Operations because all of the sixteen officers placed there had more seniority than Plaintiff. *Id.* at ¶ 106; Eichenholtz Decl. Ex. W at 6; Eichenholtz Decl. Ex. X at 6, 8. Plaintiff was ultimately reassigned first to APIS in April 2009 and then to Cargo Operations, Plaintiff's first choice, in October 2009 when spots became available. Compiled Rule 56.1 Stmt at ¶¶ 112-15.

**EEOC Complaints**

On March 17, 2009, Plaintiff filed a formal written complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that he had been discriminated against on the basis of his national origin and gender and had been retaliated against when he was not given his preferred assignment of Cargo Operations during the BRP Process. *Id.* at ¶ 171. On July 30, 2009, Plaintiff filed a second EEOC complaint, this one about his one-day suspension relating to the December 2007 incident with SCBPO Sachdeva. *Id.* at ¶ 172. After a full investigation, an EEOC Judge ruled there was no evidence of discrimination in either complaint. *Id.* at ¶ 173. On September 3, 2010, CBP adopted the decision in a Final Agency

Decision. *Id.* at ¶ 174. On January 31, 2011, the EEOC affirmed the Final Agency Decision in response to an appeal by Plaintiff. *Id.* at ¶ 175.

**Initial Filing of the Instant Action**

On April 29, 2011, Plaintiff filed the instant action alleging discrimination on the basis of national origin, sex, and gender, and retaliation in violation of Title VII based on the aforementioned incidents. *See* Complaint.

**July 25, 2011 Incident and Suspension**

On July 25, 2011, Plaintiff was assigned to work in the passenger processing area at JFK. Compiled Rule 56.1 Stmt at ¶ 116. Plaintiff reported to a different booth than the one to which he had been assigned because another CBPO's personal possessions were in Plaintiff's assigned booth. *Id.* at ¶ 122; Eichenholtz Decl. Ex. DD at 2; Eichenholtz Decl. Ex. GG at 2. Plaintiff's supervisor SCBPO Pedro Cano, a Hispanic male, told Plaintiff that he was supposed to be in a different booth. Compiled Rule 56.1 Stmt at ¶¶ 126, 264. Plaintiff alleges SCBPO Cano then threatened Plaintiff to convince Plaintiff to move to his assigned booth. *Id.* at ¶¶ 265-66. Plaintiff began to feel sick, notified SCBPO Cano that he was going home, and left. *Id.* at ¶¶ 269-70.

SCBPO Cano reported the incident to Commander Chance Youngs. *Id.* at ¶ 139. Commander Youngs instructed Plaintiff to provide a written explanation for his actions. *Id.* at ¶ 140; Eichenholtz Decl. Ex. GG at 1. Plaintiff provided a statement to Commander Youngs. Eichenholtz Decl. Ex. GG at 2.

On November 29, 2011, Richard B. O'Connell, Assistant Port Director of Trade Operations at JFK Airport, charged Plaintiff with failure to follow supervisory instructions, absence without leave, and unprofessional conduct and suggested Plaintiff be suspended for two

days. Eichenholtz Decl. Ex. HH. Plaintiff challenged the charges with the help of his union representative. Eichenholtz Decl. Ex. II. On May 23, 2012, Wayne R. Biondi, Acting Port Director of JFK International Airport sustained all three charges and suspended Plaintiff for two days. *Id.* Plaintiff served his suspension on June 27 and 28, 2012. Compiled Rule 56.1 Stmt at ¶ 147.

**November 25, 2011 Incident and Suspension**

On November 25, 2011, Plaintiff volunteered to perform overtime after his shift. *Id.* at ¶ 152. Commander Youngs told Plaintiff to drive a car on the tarmac to the medical van to watch prisoners. *Id.* at ¶ 155. Plaintiff told Commander Youngs that he could not perform that assignment. *Id.* at ¶¶ 156, 282. Commander Youngs then instructed Plaintiff to report to immigration to process passports. *Id.* at ¶ 157. Plaintiff was unprepared to do so as he did not have his passport stamp with him. *Id.* at ¶ 158. Commander Youngs cancelled Plaintiff's overtime assignment. *Id.* at ¶ 160.

Plaintiff and Commander Youngs both submitted written accounts of the events of November 25, 2011. *Id.* at ¶ 162. After reviewing the accounts, Assistant Port Director John Mirandona charged Plaintiff with willful and intentional refusal to obey a proper order of a superior and proposed to suspend Plaintiff for fourteen days. Compiled Rule 56.1 Stmt at 162; Eichenholtz Decl. Ex. LL. On March 2, 2012, Plaintiff filed a written reply through his attorney. Compiled Rule 56.1 Stmt at ¶ 165; Eichenholtz Decl. Ex. LL. On March 26, 2012, Port Director Brian Humphrey sustained the charge against Plaintiff and sentenced Plaintiff to a ten-day suspension. Compiled Rule 56.1 Stmt at ¶ 166; Eichenholtz Decl. Ex. LL. Plaintiff started serving his ten-day suspension on or about May 14, 2012. Compiled Rule 56.1 Stmt at ¶ 167.

**Amended Complaint in the Instant Action**

On October 17, 2012, Plaintiff filed an amended complaint to add allegations regarding his suspensions following the July and November 2011 incidents. Dkt. 15 ("Amended Compl."). On May 11, 2015, Defendant filed a motion for summary judgment on all of Plaintiff's claims. Memo for SJ; Reply. The Court will discuss the summary judgment standard before analyzing each of Plaintiff's claims in turn.

## DISCUSSION

### I. Legal Standard

A court appropriately grants summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (quoting *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The moving party must meet its burden by pointing to evidence in the record, including depositions, documents, affidavits, or other materials which demonstrate the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A), (2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In determining whether summary judgment is appropriate, [the] Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). The role of the district court is not to weigh the evidence and determine the truth of the matter, but rather to perform "the threshold inquiry of whether there is the need for a trial[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

If the moving party fulfills its preliminary burden, the burden shifts to the non-movant to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1). Statements devoid of specifics and evidence that is merely colorable are insufficient to defeat a properly supported motion for summary judgment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citing *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

"Summary judgment is appropriate even in discrimination cases, for, as the Second Circuit noted, the salutary purpose of summary judgment – avoiding protracted, expensive, and harassing trials – apply no less to discrimination cases than to . . . other areas of litigations." *Orange v. Leake & Watts, Inc.*, 13-CV-6110, 2015 WL 2340649, at *2 (S.D.N.Y. May 15, 2015) (Forrest, J.) (internal quotation marks and brackets omitted) (citing *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). "Nonetheless, courts must be particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." *Id.* (internal quotation marks and citation omitted). "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination. *Id.* (internal quotation marks and citation omitted).

## II.     Analysis

Plaintiff brings claims of (1) discrimination on the basis of sex, gender, and national origin; (2) retaliation; (3) hostile work environment; and (4) sexual harassment. Memo in Opp. The Court will address each claim in turn.

## A. Plaintiff's Discrimination Claims

"In assessing a defendant's motion for summary judgment on a Title VII claim, courts generally apply the burden-shifting framework first adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[2] *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, 13-CV-3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015) (Gleeson, J.) (citing *Ruiz v. Cnty of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)). "Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Id.* (citation omitted) This burden can be met by a *de minimus* showing. *Id.* (citing *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)).

"If the plaintiff satisfies this initial burden, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its action. *Id.* (citation omitted). "If the defendant provides such a reason, summary judgment can still be denied if the plaintiff can show the defendant's proffered reason is a pretext for discrimination." *Id.* (citing *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) and *Ruiz*, 609 F.3d at 492). "To show pretext, a plaintiff is not required to prove the employer's stated justification was asserted with intent to deceive or in bad faith; rather, he must simply show that discrimination played a role in an adverse employment decision." *Id.* (citing *Henry v. Wyeth Pharm., Inc.*, 6161 F.3d 134, 157 (2d Cir. 2010)) (internal quotations omitted).

"To establish a prima facie case for employment discrimination [under Title VII], a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took

---

[2] Nowhere in his moving papers does Plaintiff assert Defendant had a mixed-motive for the challenged adverse employment actions, so the Court will not apply the higher burden "mixed-motive" framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-245 (1989) (superseded on other grounds).

place under circumstances giving rise to the inference of discrimination." *Id.* (citations and internal quotations omitted). Here, Defendant does not contest for the purposes of this motion only that Plaintiff has satisfied the first three elements of the prima facie case for all four instances of discrimination that he alleges. Memo for SJ at 5-6. Defendant, however, vigorously contests that Plaintiff can show circumstances giving rise to an inference of discrimination. The Court will address each of the four discriminatory events alleges by Plaintiff in turn.

### 1. Plaintiff's Holiday Work Assignments

Plaintiff first challenges his assignment to work on Thanksgiving Day 2007 and New Years' Day 2008 as discriminatory. Memo for SJ at 6; Compiled Rule 56.1 Stmt at ¶ 22. Plaintiff alleges this assignment was discriminatory because two more junior officers, Officers F and V, were not scheduled to work holidays during the period covering Thanksgiving Day 2007, Christmas Eve 2007, Christmas Day 2007, and New Year's Day 2008, and they should have been because they were more junior. Compiled Rule 56.1 Stmt at ¶¶ 19, 25, 27.

"The *sine qua non* of a . . . discriminatory action claim under Title VII is that the discrimination must be *because of [the protected characteristic]*." *Bivens v. Inst. for Cmty. Living, Inc.*, 14-CV-7173, 2015 WL 1782290, at *7 (S.D.N.Y. Apr. 17, 2015) (Engelmayer, J.) (internal quotation marks omitted) (emphases in original) (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)).

> As the Second Circuit has explained, it is well settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to: the employer's criticism of the plaintiff's performance in [] degrading terms [related to the protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of [similarly situated] employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.

*Id.* at \*8 (internal quotation marks, ellipses, and citations omitted). Such circumstances can include "actions or remarks made by decisionmakers that could be viewed as reflecting discriminatory animus[.]" *LaSalle v. City of N.Y.*, 13-CV-5109, 2015 WL 1442376, at \*2 (S.D.N.Y. Mar. 30, 2015) (Crotty, J.) (internal quotation marks and citation omitted). "If there is no direct evidence of an employer's discriminatory intent, [p]laintiff then has to show that the employer treated plaintiff less favorabl[y] than a similarly situated employee outside his protected group but who is similar in all material respects to the individual whom he seeks to compare himself with." *Doroz v. Tect Utica Corp.*, 12-CV-391, 2015 WL 1897134, at \*7 (N.D.N.Y. Apr. 27, 2015) (D'Agostino, J.) (internal quotation marks and citations omitted); *see also Campbell v. N.Y. City Transit Auth.*, 11-CV-2827, 2015 WL 1349820, at \*14 (E.D.N.Y. Mar. 26, 2015) (Brodie, J.) (citations omitted).

Plaintiff has provided no direct evidence of discrimination. Instead, Plaintiff argues that Officers F and V were similar to him in all material respects but for their sex/gender and national origin. Plaintiff argues both junior officers were not required to work holidays even though they should have been required to work the holidays before Plaintiff, a more senior officer, was required to do so. Compiled Rule 56.1 Stmt at ¶ 23 (noting Plaintiff's focus on seniority as the determinative factor). That the junior officers were given the days off while Plaintiff was required to work is evidence of discrimination. Memo in Opp. at 7.

As an initial matter, both Officers F and V are men, and therefore cannot serve as comparators for Plaintiff's sex/gender discrimination claim. Memo for SJ at 6-7. Further, Plaintiff's claim also fails on both grounds of discrimination alleged by Plaintiff because both Officers F and V worked holidays during the period in question. Defendant provides print outs from the CBP Overtime Scheduling System ("COSS") as evidence that Officer F worked

Thanksgiving Day 2007, Christmas Eve 2007, Christmas Day 2007, and New Year's Day 2008. Dkt. 51 ("Renna Decl") at ¶¶ 7, 9. Defendant also provides COSS print outs as evidence that Officer V worked Thanksgiving Day 2007, Christmas Eve 2007, Christmas Day 2007, and New Year's Day 2008 as well. Renna Decl. at ¶¶ 4-5. Plaintiff does not contest that Officer V worked those holidays. Compiled Rule 56.1 Stmt at ¶ 28. Plaintiff does contest that Officer F worked those days, but provides no evidence other than his own statements of "direct knowledge" to support his position. *See id.* at ¶ 26; Dkt. 46 ("P Decl.") at ¶ 2. A plaintiff "cannot defeat summary judgment simply by resting on bald allegations and self-serving conclusions." *Fasoli v. City of Stamford*, 11-CV-767, 2014 WL 6808679, at *9 (D. Conn. Nov. 24, 2014) (Haight, J.). Plaintiff therefore cannot show that either Officer V or Officer F were similar to him in all material respects but for their sex/gender and national origin and were treated better than he was.

Plaintiff has failed to raise a material issue of disputed fact with respect to any circumstances giving rise to an inference of discrimination in this instance. The undisputed facts cannot give rise to an inference of discrimination. As a result, Plaintiff has failed to meet the requirements of the *prima facie* case in regards to his allegation that he was discriminated against by being required to work Thanksgiving Day 2007 and New Year's Day 2008. Accordingly, Defendant's motion for summary judgment on this issue is GRANTED.

### 2. Plaintiff's Suspension for December 29, 2007 Incident

Plaintiff next challenges the suspension he received following an incident between Plaintiff and his SCPBO Sachdeva on December 29, 2007. Memo for SJ at 7. Plaintiff argues the suspension was the product of anti-Hispanic and anti-male bias of SCPBO Sachdeva and her supervisor, Chief Rios. Memo in Opp. at 7; Compiled Rule 56.1 Stmt at ¶ 49.

Plaintiff was suspended for two days following an incident between Plaintiff and SCPBO Sachdeva. Chief Rios, a Hispanic woman, received written reports about the incident from both SCPBO Sachdeva and Plaintiff and then recommended disciplinary action against Plaintiff. Compiled Rule 56.1 Stmt at ¶¶ 51-53. Assistant Area Director Robert Meekins reviewed the underlying incident, concluded Plaintiff acted inappropriately, and proposed a two-day suspension. *Id.* at ¶¶ 54-55. Plaintiff contested the suspension; his allegations were reviewed during an administrative investigation, which found there was no evidence corroborating Plaintiff's allegations of sexual advances by SCPBO Sachdeva, hostile work environment, comments by co-workers about people of Puerto Rican descent, or a campaign of retaliation against Plaintiff. *Id.* at ¶¶ 77-87. CBP management concluded all of Plaintiff's allegations were unsubstantiated. *Id.* at ¶ 88. Plaintiff's suspension was subsequently reduced from two days to one day, and Plaintiff served his one day suspension on June 16, 2009. *Id.* at ¶¶ 90-91.

Plaintiff argues his suspension was the result of discrimination on the basis of his national origin and sex/gender by SCPBO Sachdeva and Chief Rios. The final decision to suspend Plaintiff, however, was made by Assistant Area Director Robert Meekins and then modified and affirmed by others in CBP management after an extensive investigation. *Id.* at ¶¶ 77-88, 90-91. Defendants include in their motion the letter from Area Director Camille Polimeni to Plaintiff explaining his suspension and reducing the suspension from two days to one day. Eichenholtz Decl. Ex. Q. The letter explains the charge against Plaintiff is sustained and he is found to have "conducted [himself] in an inappropriate and unprofessional manner" when speaking with SCPBO Sachdeva on December 29, 2007. *Id.* at 1. The letter also notes Plaintiff's allegations were fully investigated and found to be unsubstantiated. *Id.*

Plaintiff, on the other hand, has provided no allegations, much less evidence, of discriminatory intent on the part of Mr. Meekins or others in CBP management. Plaintiff only alleges discrimination on the parts of SCBPO Sachdeva and Chief Rios, but they did not make the final decision to suspend Plaintiff. In this case, those two women are not "decision makers" whose "actions or remarks . . . that could be viewed as reflecting discriminatory animus[]" would be relevant in finding an inference of discriminatory intent. *See LaSalle*, 2015 WL 1442376 at *2 (internal quotation marks and citation omitted). Accordingly, Plaintiff has failed to raise a material issue of disputed fact with respect to any circumstances giving rise to an inference of discrimination in this instance and so Defendant's motion for summary judgment on this issue is GRANTED.

### 3. Plaintiff's January 2009 Bid Rotation and Assignment

Plaintiff next alleges he was discriminated against during the January 2009 BRP procedure because he did not receive any of the placements that he requested. Compiled Rule 56.1 Stmt at ¶¶ 92, 97, 105. Plaintiff argues his failure to receive his bid requests was not the result of his seniority or lack thereof, but rather the result of anti-male and anti-Hispanic bias. Memo in Opp. at 7.

In January 2009, CBP used the BRP procedure in order to give CBPOs the opportunity to express their placement preferences and be assigned according to seniority. Compiled Rule 56.1 Stmt at ¶¶ 92-93. CBPOs are encouraged but are not required to submit bid request forms. *Id.* at ¶ 96. CBPOs with pending disciplinary investigations, however, are not eligible to bid. *Id.* at ¶ 94.

Plaintiff argues he should not have been able to bid because of his pending suspension, that he was forced to bid, and that, had he not bid, he would have been able to stay in Cargo

Operations rather than being moved. *Id.* at ¶ 98, 247. Defendant provides evidence in the form

of a letter from Camille Polimeni, the CBP Area Director in charge of JFK Airport, that

Plaintiff's proposal for discipline was held in abeyance while Plaintiff's allegations were

investigated, and therefore he was eligible to bid. Eichenholtz Decl. Ex. V. Plaintiff provides

nothing more than his own allegations that he should not have been able to bid to contest this

evidence of his eligibility. This is insufficient to create a contested issue of material fact. *See*

*Fasoli*, 2014 WL 6808679 at *9 (noting a plaintiff "cannot defeat summary judgment simply by

resting on bald allegations and self-serving conclusions."). Defendants also provide evidence

that the BRP policy is not mandatory in the form of the Memorandum of Understanding between

the CBP and National Treasury Employees Union which describes the BRP process, including its

voluntary nature. Eichenholtz Decl. Ex. S at P.09. Again, Plaintiff relies merely on his own

allegations that he was required to bid and, again, this is insufficient to create a contested issue of

material fact. *See Fasoli*, 2014 WL 6808679 at *9.

Further, whether or not Plaintiff was forced to bid, Plaintiff has no evidence that this was

in any way related to his sex, gender, or national origin. Plaintiff argues there was a Caucasian

male CBPO who was facing discipline who was not allowed to bid and therefore was allowed to

stay in Cargo Operations. Compiled Rule 56.1 Stmt at ¶ 101. Defendant has provided evidence

that the Caucasian male CBPO was "arrested and was not performing full duties" at the time of

the bid process; further, his disciplinary action was not held in abeyance as Plaintiff's was.

Eichenholtz Decl. Ex. V. Plaintiff and the Caucasian male CBPO are therefore not similarly

situated with respect to the BRP process because Plaintiff could participate and the other CBPO

could not. Compiled Rule 56.1 Stmt at ¶ 106; Eichenholtz Decl. Ex. W at 3-6, 9, 11;

Eichenholtz Decl. Ex. X at 6-8.

In addition, Defendant has shown that Plaintiff was denied his top choice positions not on the basis of his national origin or sex or gender but because all of the individuals who took that position had more seniority than he did. Compiled Rule 56.1 Stmt at ¶ 106; Eichenholtz Decl. Ex. W at 3-6, 9, 11; Eichenholtz Decl. Ex. X at 6-8. Specifically, the least senior employee who received a position in Cargo Operations, Plaintiff's first choice position, had a seniority date of 4/13/1997. Eichenholtz Decl. Ex. X at 8. Plaintiff's seniority date is 7/9/2001, more than four years after the least senior individual who received a placement in Cargo Operations. *Id.* Plaintiff has provided no evidence or even allegations of female, non-Hispanic CBPOs without disciplinary action (who would be the similarly situated comparators treated better on the basis of sex, gender, and national origin) who were assigned positions ahead of Plaintiff even though they were less senior than Plaintiff. Accordingly, Plaintiff has failed to raise a material issue of disputed fact with respect to any circumstances giving rise to an inference of discrimination. Defendant's motion for summary judgment on this issue is GRANTED.

### 4. Plaintiff's Suspension for July 2011 Incident

Plaintiff also contests the suspension he received following an incident in July 2011 between Plaintiff and SCBPO Pedro Cano, a Hispanic male, as discriminatory on the basis of Plaintiff's sex, gender, and national origin. Amended Compl. at ¶¶ 92-96.

Plaintiff makes many allegations regarding the incident on July 25, 2011. *See* Compiled Rule 56.1 Stmt at ¶¶ 257-278. None of the allegations, however, include any reference to circumstances suggesting discriminatory intent on the basis of Plaintiff's sex, gender, or national origin. For example, Plaintiff contends SCBPO Pedro Cano and Plaintiff got into an argument about Plaintiff's presence in a booth that was not the one to which Plaintiff was assigned. *Id.* at ¶¶ 119-131. Defendants, however, provide evidence that SCBPO Pedro Cano is a Hispanic male

or Puerto Rican ancestry like Plaintiff, and Plaintiff does not allege that SCBPO Pedro Cano took any actions on the basis of Plaintiff's sex, gender, or national origin. *See* Eichenholtz Decl. Ex. AA at 14. In fact, nowhere in Plaintiff's allegations about the incident are sex, gender, or national origin ever mentioned. Compiled Rule 56.1 Stmt at ¶¶ 116-50, 257-78.

Further, Plaintiff was charged with specific infractions arising out of the June 25, 2011 incident by Richard B. O'Connell, Assistant Port Director or Trade Operations at JFK Airport. Eichenholtz Decl. Ex. HH. Mr. O'Connell's letter explains Plaintiff was found to have committed the following infractions: failure to follow supervisory instructions, absence without leave, and unprofessional conduct. *Id.* Plaintiff contested the charges orally. Eichenholtz Decl. Ex. II at 1. The charges against Plaintiff were sustained by Wayne R. Biondi, Acting Port Director at JFK International Airport, and Mr. Biondi finalized Plaintiff's two day suspension. *Id.* at 1-2. As a result, Plaintiff was suspended for two days in June 2012. Compiled Rule 56.1 Stmt at ¶¶ 146-47.

Plaintiff has provided no allegations, much less evidence, of discriminatory intent on the part of Mr. O'Connell or Mr. Biondi, who were the final decision makers in the case of his suspension. Even if Plaintiff's allegations are understood to allege discriminatory intent on the part of SCBPO Pedro Cano, another Hispanic male, *see* Compiled Rule 56.1 Stmt at ¶ 293, he was not the "decision maker[]" in this instance whose "actions or remarks . . . that could be viewed as reflecting discriminatory animus" would be relevant in finding an inference of discriminatory intent. *LaSalle*, 2015 WL 1442376 at *2 (internal quotation marks and citation omitted). Accordingly, Plaintiff has failed to raise a material issue of disputed fact with respect to any circumstances giving rise to an inference of discrimination in this instance and so Defendant's motion for summary judgment on this issue is GRANTED.

### 5. Plaintiff's Suspension for November 2011 Incident

Similarly, Plaintiff challenges his suspension for an incident that occurred on November 25, 2011 as discriminatory on the basis of his national origin, sex, and gender. Amended Compl. at ¶¶ 97-101. As with Plaintiff's allegations about his suspension for the July 2011 incident, however, none of the allegations include references to Plaintiff's sex, gender, or national origin. Compiled Rule 56.1 Stmt at ¶¶ 151-70; 279-89.

Defendants, on the other hand, provide evidence that Plaintiff's suspension was not related to his national origin, sex, or gender, but rather to the acts in which Plaintiff engaged. On November 25, 2011, Plaintiff volunteered for overtime work after his shift. *Id.* at ¶ 152. Plaintiff was assigned to drive a car on the tarmac to the medical van to watch prisoners. *Id.* at ¶ 155. Plaintiff refused to do so because, according to Commander Chase Youngs who gave him the assignment, "he does not know how to drive in the dark on the field." Eichenholtz Decl. Ex. JJ; *see also* Eichenholtz Decl. Ex. FF at 45-46. Commander Youngs then assigned Plaintiff to stamp passports at immigration control, but Plaintiff again refused to do so because he did not have his stamp. Eichenholtz Decl. Ex. JJ; *see also* Compiled Rule 56.1 Stmt at ¶ 158. According to Commander Youngs, CBPOs are "expected to have all their equipment available" even on overtime. Eichenholtz Decl. Ex. FF at 46-47. Commander Youngs then cancelled Plaintiff's overtime. Compiled Rule 56.1 Stmt at ¶ 160; Eichenholtz Decl. Ex. JJ.

On February 22, 2012, John Mirandona, Assistant Port Director, Tactical Operations, charged Plaintiff with willful and intentional refusal to obey a proper order of a superior after reviewing both Plaintiff's and Commander Youngs' accounts of the incident. Eichenholtz Decl. Ex. LL at 1. Mr. Mirandona suggested that Plaintiff be suspended for fourteen days. *Id.* Plaintiff's attorney submitted a written reply contesting the charges. *Id.* On March 26, 2012,

Brian Humphrey, Port Director of JFK International Airport, sustained the charges but reduced Plaintiff's suspension from fourteen to ten days. *Id.* Plaintiff started serving his suspension on May 14, 2012. Compiled Rule 56.1 Stmt at ¶ 167.

As with Plaintiff's allegations related to his suspension for the July 2011 incident, Plaintiff has provided no allegations, much less evidence, of discriminatory intent on the part of Mr. Mirandona or Mr. Humphrey, who were the final decision makers in the case of his suspension. Even if Plaintiff's allegations are understood to allege discriminatory intent on the part of Commander Youngs, a male of undisclosed race, *see* Compiled Rule 56.1 Stmt at ¶ 293, he was not the "decision maker[]" in this instance whose "actions or remarks . . . that could be viewed as reflecting discriminatory animus" would be relevant in finding an inference of discriminatory intent. *LaSalle*, 2015 WL 1442376 at *2 (internal quotation marks and citation omitted). Accordingly, Plaintiff has failed to raise a material issue of disputed fact with respect to any circumstances giving rise to an inference of discrimination in this instance. Defendant's motion for summary judgment on this issue is GRANTED.

## B. Plaintiff's Retaliation Claim

"As with Title VII discrimination [claims], retaliation claims are evaluated under a burden shifting analysis." *Orange*, 2015 WL 2340649 at *4 (citation omitted). To make out a *prima facie* case for retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at *5 (internal quotation marks and citation omitted). Once the plaintiff has made out a *prima facie* case, the "defendant then must articulate a legitimate, non-retaliatory reason for the alleged retaliatory conduct." *Id.* (citation omitted). "If [the] defendant meets that burden, plaintiff must

adduce evidence sufficient to raise a fact issue as to whether the employer's reason was merely a pretext for retaliation." *Id.* (internal quotation marks and citation omitted).

The causal connection between the protected activity and the adverse employment action, the fourth element of the *prima facie* case, a plaintiff "must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (internal quotation marks omitted) (citing *Univ. Of Tex. Sw. Med. Ctr. v. Nassar*, 113 S.Ct. 2517, 2533 (2013)). While this "does not alter the plaintiff's ability to demonstrate causation at the prima facie stage . . . through temporal proximity[,]" a plaintiff can only use temporal proximity if there are no allegations that would otherwise undermine but-for causation. *Id.*

### 1. Plaintiff's 2007 Holiday Work Assignments and Suspension

Plaintiff argues his assignment to work certain holidays at the end of 2007 and his suspension for failing to show up to work on those holidays was retaliatory. Amended Compl. at ¶¶ 102-07. Plaintiff, however, has failed to create a material issue of fact regarding the first element of the prima facie case, *i.e.*, whether he engaged in protected activity prior to these events.

Under the first element, "[t]he term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012) (citations and internal quotation omitted). Such an action can be "informal – an employee does not need to lodge a formal complaint of discrimination." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (Brodie, J.) (citation omitted). The complaint,

however, must be "directed at conduct prohibited by Title VII." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff claims that the first time he sought EEO counseling was sometime in late April or early May 2008. Compiled Rule 56.1 Stmt at ¶¶ 237-38. Plaintiff also sent an email to CBP management on April 18, 2008, "claiming that he was being discriminated and retaliated against and was the victim of a hostile work environment." *Id.* at ¶ 217. Although Plaintiff has provided no evidence other than his own statements to support the former allegation, even if the Court were to treat the unsupported allegation as true, it would still not create a material issue of fact as to the first element of a prima facie case. The claimed retaliatory action took place in late 2007, at least four months before Plaintiff first alleges he complained of discriminatory behavior to anyone at EEOC or CBP. Plaintiff's own statements, as well as the undisputed April 18, 2008 email, indicate he did not participate in a protected activity prior to the challenged employer action. Thus, there is no disputed issue of material fact. Plaintiff has failed to state a prima facie case for retaliation on this issue. Accordingly, Defendant's motion for summary judgment on this issue is GRANTED.

### 2. Plaintiff's January 2009 Bid Rotation and Assignment

Plaintiff next argues that he was retaliated against for his April 18, 2008 email and EEO complaint about SCBPO Sachdeva when he was required to participate in the 2009 BRP procedure and was subsequently removed from his preferred assignment in Cargo Operations. Defendant concedes for the purposes of this motion that the first three elements of the *prima facie* case (protected activity, knowledge of the protected activity, and an adverse employment action) are not at issue, but argues Plaintiff has failed to substantiate a disputed issue of material

fact as to the fourth element, *i.e.*, a causal connection between the protected activity and the adverse employment action. Memo for SJ at 11.

"To establish the causation prong of a *prima facie* case, Plaintiff must be able to show that the retaliatory actions closely followed the protected activity of that there was a reasonably close temporal proximity between the two." *Bowen-Hooks*, 13 F. Supp. 3d at 229 (internal quotation marks and citation omitted). "The Second Circuit[, however,] has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, and had held that each case must be decided according to its unique context." *Id.* (internal quotation marks and citation omitted).

As initial matter, as discussed above, Plaintiff has provided no facts other than his own self-serving statements to counter Defendant's evidence that the bidding process is purely a voluntary one. *See* Section II.A.3., *supra*. Plaintiff also has provided no facts to suggest that, if he was forced to bid, that it was as a result of his complaints against SCBPO Sachdeva. Further, Plaintiff cannot rely on temporal proximity in this case because Plaintiff has provided no context to support a temporal proximity finding. While the Second Circuit has held that seven months is not too long in circumstances where plaintiffs have alleged specific discriminatory and retaliatory comments by decision makers, seven months alone seems as though it would be too long to infer a direct causal link between events. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (discussing circumstances permitting a finding of temporal proximity at seven months). Here, the protected activity of the email to management and EEO complaint took place in April and May 2008, but Plaintiff did not participate in the BRP Process until January 2009, eight months later. Further, Plaintiff has provided no further allegations, much less evidence, to support a finding of a causal connection between the two events. Plaintiff does not suggest

anyone ever said or indicated in any manner that he was being forced to bid because he had sent an email about SCBPO Sachdeva, but only alleges that someone sent him an e-mail stating he was required to bid. Compiled Rule 56.1 Stmt at ¶ 246. Further, Defendant provides evidence that SCBPO Sachdeva was in no way involved in the BRP Process and that the process is meant to allow CBPOs to bid for positions more easily on the basis of their seniority. *See* Eichenholtz Decl. Ex. X at 5; Eichenholtz Decl. Ex. S at P.05 (noting the procedure was adopted "[i]n the interest of providing opportunities for employees to receive work assignments in accordance with their preferences[.]").

Given the eight month stretch of time between the two events, their mere occurrence without more from Plaintiff is not enough to support a finding of causal connection in this situation. Defendant has provided evidence that the BRP process was not implemented in a retaliatory fashion, and Plaintiff has not provided evidence to create a disputed issue of material fact. Plaintiff has failed to state a prima facie case for retaliation on this issue. Accordingly, Defendant's motion for summary judgment on this issue is GRANTED.

### 3. Plaintiff's Suspension for July 2011 Incident

Plaintiff next argues that he was retaliated against for his April 18, 2008 email and EEO complaint about SCBPO Sachdeva, his two 2009 EEOC complaints, and for the April 11, 2011 filing of this lawsuit when he was suspended following the incident between Plaintiff and SCBPO Pedro Cano in July 2011. As with Plaintiff's retaliation claim related to the BRP procedure, Defendant concedes for the purposes of this motion that the first three elements of the *prima facie* case (protected activity and an adverse employment action) are not at issue, but argues Plaintiff has failed to substantiate a disputed issue of material fact as to the fourth

element, *i.e.*, a causal connection between the protected activity and the adverse employment action. Memo for SJ at 13.

Plaintiff provides no direct evidence of retaliation, but instead relies on temporal proximity and surrounding circumstances composed of his allegations that the persons involved in the suspension knew of his 2008 email, his two 2009 EEOC complaints, and the filing of the instant action in 2011. Compiled Rule 56.1 Stmt at ¶¶ 292-93. As an initial matter, the 2008 email and the 2009 EEOC complaints are far too remote in time to satisfy the temporal proximity requirement. The Second Circuit has held that time delays of fifteen months and of two years is too long to support a causal connection based on temporal proximity. *See Bowen-Hooks*, 13 F. Supp. 3d at 229 (citations omitted). The time between the April 2008 email and the initial decision to suspend Plaintiff in November 2011 is over three years. Compiled Rule 56.1 Stmt at ¶ 143. Similarly, the time between Plaintiff's formal EEOC Complaints in March and July 2009 are more than and almost exactly two years before the decision to suspend Plaintiff, respectively. *Id.* at ¶ 171. None of these protected activities can satisfy the temporal proximity standard. Therefore, Plaintiff can only allege the suspension for the July 2011 incident was in retaliation from his filing of this lawsuit.

The instant action was filed seven months before the initial decision to suspend Plaintiff was made in November 2011. *Id.* at ¶ 143. As discussed above, the Second Circuit has held that seven months is not too long to find temporal proximity in circumstances where plaintiffs have alleged specific discriminatory and retaliatory comments by decision makers. *See Summa*, 708 F.3d at 128 (discussing circumstances permitting a finding of temporal proximity at seven months). The Second Circuit, however, has cautioned "Title VII claims must be proved according to traditional principles of but-for causation, which required proof that the unlawful

retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Zann Kwan*, 737 F.3d at 845 (internal quotation marks omitted) (citing *Univ. Of Tex. Sw. Med. Ctr.*, 113 S.Ct. at 2533). While this "does not alter the plaintiff's ability to demonstrate causation at the prima facie stage . . . through temporal proximity[,]" a plaintiff can only use temporal proximity if there are no undisputed facts that would otherwise undermine but-for causation. *Id.*

As discussed in Section II.A.4, *supra*, Defendant provides evidence in the form of letters from Mr. O'Connell and Mr. Biondi to show Plaintiff was suspended for his inappropriate conduct towards SCBPO Pedro Cano, rather than for either discriminatory or retaliatory reasons. *See* Eichenholtz Decl. Ex. HH; Eichenholtz Decl. Ex. II. Defendant's evidence shows Plaintiff engaged in a process to appeal his suspension, but that it was sustained following his appeal. Eichenholtz Decl. Ex. II; Compiled Rule 56.1 Stmt at ¶ 145. Plaintiff provides no facts to suggest that Mr. O'Connell or Mr. Biondi acted in a retaliatory fashion in charging Plaintiff or sustaining the charges beyond alleging that they knew of the instant lawsuit. Compiled Rule 56.1 Stmt at ¶ 292. Even assuming this unsupported allegation were true, this knowledge is not enough when there are undisputed facts that indicate Plaintiff was suspended not as retaliation for this lawsuit but as a result of his own unprofessional behavior at work. Plaintiff concedes that he was charged and the charges were sustained. *Id.* at ¶¶ 143-47. Defendant, therefore, has presented undisputed facts that Plaintiff was suspended for non-retaliatory reasons, disproving but-for causation. Plaintiff has presented no contested issue of material fact to be presented to a jury. Accordingly, Defendant's motion for summary judgment on this issue is GRANTED.

### 4. Plaintiff's Suspension for the November 2011 incident

Plaintiff last argues that he was retaliated against for his April 18, 2008 email, for his 2009 EEOC complaints, and for the April 11, 2011 filing of this lawsuit when he was suspended following the incident between Plaintiff and Commander Youngs in November 2011. As with Plaintiff's previous two retaliation claims, Defendant concedes for the purposes of this motion that the first three elements of the *prima facie* case (protected activity and an adverse employment action) are not at issue, but argues Plaintiff has failed to substantiate a disputed issue of material fact as to the fourth element, *i.e.*, a causal connection between the protected activity and the adverse employment action. Memo for SJ at 14.

Once again, Plaintiff provides no direct evidence of retaliation, but instead relies on temporal proximity and surrounding circumstances composed of his allegations that the persons involved in the suspension knew of his 2008 email, his 2009 EEOC complaints, and the filing of the instant action in 2011. Compiled Rule 56.1 Stmt at ¶¶ 292-93. As discussed above, II.B.3., *supra*, the 2008 email and 2009 EEOC complaints are too remote in time to support a finding of retaliation based on temporal proximity. Further, the initial proposal to suspend Plaintiff for the November 2011 incident was not made until February 22, 2012. Compiled Rule 56.1 Stmt at ¶ 162. February 2012 is ten months after the filing of the initial lawsuit in April 2011. Other courts in this Circuit have determined that ten months is "too attenuated . . . to establish that [the adverse employment action] was in retaliation for any protected activity. *John v. Kingsbrook Jewish Med. Ctr./ Rutland Nursing Home*, 11-CV-3624, 2014 WL 1236804, at *20 (E.D.N.Y. Mar. 25, 2014) (Brodie, J.) (citations omitted); *see also Nicastro v. N.Y.C. Dep't of Design & Constr.*, 125 F. App'x 357, 358 (2d Cir. 2005) (suggesting ten months is not close enough to show temporal proximity in a retaliation case). The Court is inclined to agree that ten months is

simply too long of a delay to infer a causal connection by temporal proximity in these circumstances.

Further, Plaintiff's case suffers from the same infirmities as his case regarding the suspension following the July 2011 incident, namely, that the charges against Plaintiff were sustained. Mr. Mirandona charged Plaintiff and proposed a suspension against him; Mr. Humphrey sustained the charges after considering Plaintiff's written reply to the charges. Eichenholtz Decl. Ex. LL. Plaintiff concedes this course of events. Compiled Rule 56.1 Stmt at ¶¶ 162-67. Defendant has presented undisputed facts that Plaintiff was suspended on the basis of his conduct at work rather than for retaliatory reasons, thereby disproving but-for causation. Plaintiff has presented no disputed issue of material fact to be presented to a jury.

Accordingly, Defendant's motion for summary judgment on this issue is GRANTED.

### C. Plaintiff's Hostile Work Environment Claim

In addition to his discrimination and retaliation claims, Plaintiff also claims that he was subject to a hostile work environment because of his national origin, sex, gender, and protected activity, in violation of Title VII. Memo for SJ at 20.

"In order to establish a hostile work environment claim, a plaintiff must produce evidence that the complained of conduct (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's protected characteristic." *Bowen-Hooks*, 13 F. Supp. 3d at 233 (internal quotation marks and citations omitted). "To withstand summary judgment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment." *Id.* at 233-34 (internal quotation marks and citations omitted). "In considering whether a plaintiff has met this burden, courts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014). "Periodic and episodic incidents are not sufficient to establish hostile work environment claims." *Bowen-Hooks*, 13 F. Supp. 3d at 234 (citations omitted).

Defendant argues that Plaintiff's claim must fail as a matter of law because Plaintiff cites only to a few instances of alleged discrimination/ retaliation in support of his hostile work environment claim, and these instances are too episodic to state a claim for a hostile work environment. Memo for SJ at 23-25. For the reasons explained below, the Court agrees.

Plaintiff relies first on the alleged instances of discrimination/ retaliation discussed above, Sections II.A and II.B, *supra*, to support his claim of a hostile work environment. In addition, Plaintiff alleges that certain of his fellow employees made disparaging comments about people of Puerto Rican descent in January 2008. Compiled Rule 56.1 Stmt at ¶¶ 84, 228. This claim was found to be unsubstantiated after an investigation. *Id.* at ¶ 87. Further, Plaintiff also alleges that he was the victim of a hostile work environment on the basis of sexual harassment by SCBPO Sachdeva in 2006. *Id.* at ¶¶ 61-71; 185-90. Defendant concedes that SCBPO Sachdeva smiled at Plaintiff and paid attention to him on two or three occasions in September 2006. *Id.* at ¶¶ 61, 185. Plaintiff alleges SCBPO Sachdeva looked at him "seductively" and "batt[ed] her eyes" for between two and three seconds on two occasions. *Id.* at ¶¶ 61, 63. Plaintiff also alleges that, on one occasion, SCBPO Sachdeva briefly put her hand on his thigh. *Id.* at ¶¶ 66, 186.

Plaintiff, without any additional support, states this conduct continued into November 2006. *Id.* at ¶ 61 (Plaintiff's response).

Even taken together and assumed to be true, however, these eight instances occurred over the course of more than five years, between the end of 2006 and the March 2012. As the Second Circuit has explained, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (internal quotation marks and citations omitted). For example, a court in this district recently found that allegations of five instances of harassing conduct over the course of one year was not sufficiently frequent to support a claim of hostile work environment. *See, e.g.*, *Paul v. Postgraduate Ctr. for Mental Health*, 12-CV-362, 2015 WL 1508316, at *35 (E.D.N.Y. Mar. 31, 2015) (Scanlon, Mag. J.). Similarly, here, eight instances of discriminatory or retaliatory conduct over the course of more than five years, an average of *1.6 instances* that made the Plaintiff feel uncomfortable *per year*, is episodic. Ultimately, these alleged instances are insufficiently frequent, do not rise to the level of continuous and concerted, and therefore are insufficient even if true to sustain a hostile work environment claim. Accordingly, Defendant's motion on this issue is GRANTED.

### D. Plaintiff's *Quid Pro Quo* Sexual Harassment Claim

Lastly, Plaintiff argues that he suffered *quid pro quo* sexual harassment by SCBPO Sachdeva in 2006. Memo in Opp. at 12-13. Plaintiff raised this claim for the first time in his opposition to Defendant's Summary Judgment motion.

"Under Title VII, a plaintiff may seek relief for sex discrimination under two theories: (1) *quid pro quo* or (2) hostile work environment." *Lashley v. New Life Business Inst., Inc.*, 13-CV-2683, 2015 WL 1014128, at *4 (E.D.N.Y. Mar. 9, 2015) (Cogan, J.) (citations omitted).

Plaintiff's hostile work environment claim is discussed above at II.C. The Court will now address Plaintiff's *quid pro quo* claim.

"To establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that he was subject to unwelcome sexual conduct, and that his reaction to that conduct was then used as a basis for decisions affecting the compensation, terms, conditions[,] or privileges of his employment." *Id.* (internal quotation marks and citations omitted). As in the retaliation context, temporal proximity between the rejection of the sexual advance and the adverse employment action can lead to or combat an inference that the plaintiff was subject to *quid pro quo* sexual harassment. *Id.* at *5 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) and *Carter v. New York*, 310 F. Supp. 2d 468, 478 n. 5 (N.D.N.Y. 2004) (Scullin, C.J.)).

Here, Plaintiff alleges the full extent of sexual harassment by SCBPO Sachdeva took place between September and November 2006. Compiled Rule 56.1 Stmt at ¶ 61 (Plaintiff's response). The first instance of alleged retaliation by SCBPO Sachdeva, however, did not occur until Plaintiff was scheduled to work on Thanksgiving 2007, which he was informed of in November 2007. *Id.* at 24. On the basis of these allegations by Plaintiff, Plaintiff cannot sustain a claim for *quid pro quo* sexual harassment because there is no temporal proximity to suggest the two events are related. One year is simply too long to find temporal proximity in a *quid pro quo* case, especially where there are no allegations of any negative intervening interactions. *See, e.g.*, *John*, 2014 WL 1236804 at *20 (finding ten months too long to find temporal proximity for a retaliation claim). Defendant relies on Plaintiffs own statements to allege there is no temporal proximity. Plaintiff has provided no evidence to the contrary. There is no disputed issue of material fact that SCBPO Sachdeva's decision to assign Plaintiff to work Thanksgiving 2007

took place one year after the alleged incidents of sexual harassment, which is not enough to show temporal proximity or an inference of causation. Accordingly, Defendant's motion on this issue is GRANTED.

## CONCLUSION

Based on the record and law as set forth above, the Court GRANTS Defendant's motion for summary judgment. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 2⅃, 2015
Brooklyn, New York